**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARYKATHRYN DOHENY,<br>individually and on behalf of all other<br>similarly situated individuals,<br><br>            Plaintiffs,<br><br>            v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORP., and<br>KYNDRYL HOLDINGS, INC.<br><br>            Defendants. | Civil Action No.  1:23-cv-03962<br><br>**JURY DEMANDED** |

**COLLECTIVE ACTION COMPLAINT**

1.      This is a collective action brought by MaryKathryn Doheny on behalf of herself and other similarly situated employees who have worked for Defendant International Business Machines Corporation ("IBM") and/or Kyndryl Holdings, Inc. ("Kyndryl"), Defendants have violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq*. in connection with recent layoffs.

2.      Kyndryl, which spun off from IBM in 2021, is the alter ego of IBM, which itself has undergone an EEOC investigation, as well as numerous lawsuits and arbitrations over the last five years, for age discrimination in using layoffs to terminate systemically its older workers in order to build a younger workforce. As described further below, Plaintiff alleges that IBM is behind Kyndryl's practice of continuing IBM's ongoing attempt to remove older employees from its workforce.

3.      Plaintiff brings this claim on behalf of herself and similarly situated Kyndryl employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

## II.     PARTIES

4.      Plaintiff MaryKathryn Doheny is sixty-four (64) years old and resides in Williamsburg, Virginia.  After working for IBM for 23 years as a Certified Client Executive organizing teams to support IBM's clients, Ms. Doheny moved to Kyndryl in 2021, where she worked for two years before her separation in March 2023.

5.      Plaintiff brings this claim on behalf of herself and similarly situated IBM and Kyndryl employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

6.      Defendant International Business Machines Corp. ("IBM") is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

7.      Defendant Kyndryl Holdings, Inc. ("Kyndryl") is a New York corporation with its principal place of business in New York, New York. Kyndryl is an American multinational technology business that offers services and goods which provide large scale information systems.

## III.    JURISDICTION AND VENUE

8.      This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the Plaintiff has brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.*

9.      The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is Armonk, New York, and Kyndryl's principal place of business is New York, New York.

## IV.   STATEMENT OF FACTS

10.     Since 2018, it has been widely publicized that IBM has been engaged in a years-long scheme to terminate older employees in order to build a younger workforce.

11.     These allegations became widely publicized after the publication of an investigative article by ProPublica, *Cutting 'Old Heads' at IBM*, Peter Gosselin and Ariana Tobin (March 22, 2018), available at https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/.

12.     As reported by ProPublica, IBM's shift in focus toward a "millennial" workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." In response to that problem, ProPublica reported, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980."

13.     Following the publication of that article, a number of lawsuits were filed against IBM for age discrimination, including collective actions such as Rusis v. International Business Machines Corp., C.A. No. 1:18-cv-08434 (S.D.N.Y.), as well as many hundreds of individual arbitration cases (cited in In Re: IBM Arbitration Agreement Litig., No. 22-1728 (2d Cir.)).

14.     Further, the EEOC conducted an investigation of IBM for age discrimination and reached a probable cause determination, finding that "there is reasonable cause to believe that [IBM] has discriminated against Charging Parties and others on account of their age."  This determination stemmed from the EEOC's analysis of data which it found "between 2013 and 2018 [] had an adverse impact on employees in the protected age group".  The EEOC also found that "top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers."

15.     As a result of those revelations and litigation, shocking evidence of IBM's age discrimination came to light, including evidence that top executives at IBM emailed with one another about "a plan to 'accelerate change by inviting the 'dinobabies' (new species) to leave' and make them an 'extinct species.'" Noam Scheiber, New York Times, *Making 'Dinobabies' Extinct: IBM's Push for a Younger Work Force* (February 12, 2022), available at https://www.nytimes.com/2022/02/12/business/economy/ibm-age-discrimination.html.

16.     In 2021, IBM spun off a new company to take over its managed infrastructure business. Originally given the placeholder name "NewCo," the company was later named "Kyndryl".  This new company, Kyndryl, designs, builds, and manages enterprise IT infrastructure solutions.

17.     Unfortunately, Kyndryl has continued IBM's playbook of age discrimination.  It has recently laid off hundreds of employees, a group which appears to have included a disproportionately high number of employees over the age of forty (40).

18.     While IBM has purported to deny any involvement in the layoffs by Kyndryl, it is clear that IBM has been involved in, and is behind, Kyndryl's continuation of IBM's discriminatory layoffs.  Like IBM, Kyndryl calls the layoffs "Resource Actions".  The severance package which Kyndryl has offered to laid off employees appears to be based on the severance packages that IBM had offered its laid off employees.  Indeed, they even include the same language, font, and spacing.  The resources that Kyndryl has provided electronically to laid off employees were provided on IBM URLs.

19.     Plaintiff asserts that Kyndryl was not acting independently of IBM when it terminated her and similarly situated employees, but rather was executing IBM's plan to continue to attempt to reduce the employment of older workers.

20.     Following a lengthy and successful career at IBM, Plaintiff was moved to Kyndryl in September 2021 as a Director of Global Software. In March 2023, Plaintiff was suddenly informed she was being laid off as part of "Resource Action." At the time of her separation, Plaintiff, who had an excellent work record and led teams of software licensing, was one of the oldest members of her team.

21.     After being notified that she would be laid off, Plaintiff attempted to utilize the services of Kyndryl's outplacement portal which was provided to assist her in identifying a new job. Throughout this process, Plaintiff was directed to IBM resources, including the initial link which was an IBM URL. Further, when she attempted to sign in to the portal, it requested her IBM employee identification number and not her Kyndryl identification number.

22.     It was thus clear that Kyndryl was rolling out a layoff as a part of IBM's continued targeting of older workers for termination.

23.     Like IBM had done, Kyndryl also continued its strategy of ensuring that older employees exited the company after being selected for layoff by preventing them from obtaining open positions at the company.  Plaintiff attempted to inquire about other open positions at the company but did not receive responses to her inquiries.

## V.    COLLECTIVE ACTION ALLEGATIONS

24.     Plaintiff brings this case as a collective action on behalf of employees over the age of forty (40) who have worked anywhere in the country who have been laid off from Kyndryl and may choose to opt in to this action.

25.     These employees who may opt in to this collective action are similarly situated to the named Plaintiff. They have worked for Kyndryl under substantially similar conditions and have been subjected to Kyndryl's and IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees over forty (40) years old. They have also all been subject to Kyndryl's policy of preventing those employees from consideration for other open internal Kyndryl positions for which they are qualified.

## COUNT I

AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)
29 U.S.C. § 621, *et seq.*

Defendants' conduct in laying off employees who are older than age forty (40) constitutes age discrimination in violation of the ADEA.  Defendants' violation of the ADEA has been knowing and willful.  This claim is brought on behalf of a class of Kyndryl employees across the country who may choose to opt in to this case, pursuant to 29 U.S.C. §§ 216(b), 626(b).

## **JURY DEMAND**

Plaintiff requests a trial by jury on all claims.


WHEREFORE, Plaintiff requests that this Court enter the following relief:

1.      Permission for Plaintiff to notify other Kyndryl employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that Kyndryl and IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.;

3.      Award compensatory damages, including back pay and front pay, in an amount according to proof;

4.      Reinstate Plaintiff and similarly situated employees to their positions;

5.      Award all costs and attorney's fees incurred prosecuting this claim;

6.      Award liquidated damages and all appropriate statutory and regulatory damages;

7.      Award interest;

8.      Issue injunctive relief in the form of an order directing Defendants to comply with the ADEA.

9.      Any other relief to which the Plaintiff and class members may be entitled.

Dated: May 11, 2023

Respectfully submitted,

MaryKathryn Doheny on behalf of herself and all others similarly situated,

By her attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, NY Bar No. 2971927
Thomas Fowler,
*pro hac vice* forthcoming
Matthew Patton, *pro hac vice* forthcoming
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com, mpatton@llrlaw.com