UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYKATHRYN DOHENY and TONY DEGRUCCIO, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP., and KYNDRYL HOLDINGS, INC.<br><br>Defendants. | Civil Action No. 1:23-cv-03962<br><br>**JURY DEMANDED** |

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

1.  This is a class and collective action brought by MaryKathryn Doheny and Tony DeGruccio on behalf of themselves and other similarly situated employees who have been laid off from Defendant Kyndryl Holdings, Inc. ("Kyndryl"). Plaintiffs allege that Kyndryl and Defendant International Business Machines Corporation ("IBM") have violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*, in connection with their recent layoffs.

2.  Kyndryl, which spun off from IBM in 2021, is the alter ego of IBM, which itself has undergone an EEOC investigation, as well as numerous lawsuits and arbitrations over the last five years, for age discrimination in using layoffs to terminate systemically its older workers in order to build a younger workforce. As described further

1

below, Plaintiffs allege that IBM is behind Kyndryl's practice of continuing IBM's ongoing attempt to remove older employees from its workforce.

3.     Plaintiffs bring this claim on behalf of themselves and similarly situated Kyndryl employees across the country who have been laid off and may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

## I.    PARTIES

4.     Plaintiff MaryKathryn Doheny is sixty-four (64) years old and resides in Williamsburg, Virginia. After working for IBM for 23 years as a Certified Client Executive organizing teams to support IBM's clients, Ms. Doheny moved to Kyndryl in 2021, where she worked for two years before her separation in March 2023.

5.     Plaintiff Tony DeGruccio is sixty (60) years old and resides in Aliso Viejo, California. After working for IBM for 22 years as a Business Development Executive, Mr. DeGruccio moved to Kyndryl in 2021, where he worked as a Services Solutions Leader working to maintain a pipeline of healthcare and life science sales opportunities for the company before his separation in May 2023.

6.     Plaintiffs bring this claim on behalf of themselves and similarly situated Kyndryl employees across the country who have been recently laid off and may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b). Plaintiff DeGruccio also brings this claim as a Rule 23 class action on behalf of similarly situated Kyndryl employees who worked in California.

7.     Defendant International Business Machines Corp. ("IBM") is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

8. Defendant Kyndryl Holdings, Inc. ("Kyndryl") is a New York corporation with its principal place of business in New York, New York. Kyndryl is an American multinational technology business that offers services and goods which provide large scale information systems.

## II.   JURISDICTION AND VENUE

9. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.*

10. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is Armonk, New York, and Kyndryl's principal place of business is New York, New York.

## III.   STATEMENT OF FACTS

11. Since 2018, it has been widely publicized that IBM has been engaged in a years-long scheme to terminate older employees in order to build a younger workforce.

12. These allegations became widely publicized after the publication of an investigative article by ProPublica, *Cutting 'Old Heads' at IBM*, Peter Gosselin and Ariana Tobin (March 22, 2018), available at https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/.

13. As reported by ProPublica, IBM's shift in focus toward a "millennial" workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." In response to that problem, ProPublica reported, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be

3

known inside as CAMS" and "sought to sharply increase hiring of people born after 1980."

14. Following the publication of that article, a number of lawsuits were filed against IBM for age discrimination, including collective actions such as <u>Rusis v. International Business Machines Corp.</u>, C.A. No. 1:18-cv-08434 (S.D.N.Y.), as well as many hundreds of individual arbitration cases (described in <u>In Re: IBM Arbitration Agreement Litig.</u>, No. 22-1728 (2d Cir.)).[1]

15. Further, the EEOC conducted an investigation of IBM for age discrimination and reached a probable cause determination, finding that "there is reasonable cause to believe that [IBM] has discriminated against Charging Parties and others on account of their age." This determination stemmed from the EEOC's analysis of data which it found "between 2013 and 2018 [] had an adverse impact on employees in the protected age group". The EEOC also found that "top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers."

16. As a result of those revelations and litigation, shocking evidence of IBM's age discrimination came to light, including evidence that top executives at IBM emailed with one another about "a plan to 'accelerate change by inviting the 'dinobabies' (new species) to leave' and make them an 'extinct species.'" Noam Scheiber, <u>New York Times</u>, *Making 'Dinobabies' Extinct: IBM's Push for a Younger Work Force* (February

---

[1] For an example of an arbitration case that proceeded to hearing and resulted in an award, <u>see</u> <u>Stafford v. International Business Machines Corp.</u>, Case No. 21-cv-06164 (S.D.N.Y. May 10, 2022) (confirming arbitration award and directing that the award be unsealed), appeal pending No. 22-1240 (2d Cir.).

4

12, 2022), available at https://www.nytimes.com/2022/02/12/business/economy/ibm-age-discrimination.html.

17.     In 2021, IBM spun off a new company to take over its managed infrastructure business. Originally given the placeholder name "NewCo," the company was later named "Kyndryl". This new company, Kyndryl, designs, builds, and manages enterprise IT infrastructure solutions.

18.     Unfortunately, Kyndryl has continued IBM's playbook of age discrimination. It has recently laid off hundreds of employees, a group which appears to have included a disproportionately high number of employees over the age of forty (40). As recently reported, numerous actions have taken place to "transform" the Kyndryl with one action including "156 people … between the ages of 25 and 70 [with] … an average age of 55." The Register, *Leaked Kyndryl files show 55 was average age of laid-off US Workers*, Thomas Claburn (May 24, 2023), available at https://www.theregister.com/2023/05/24/kyndryl_ibm_layoffs/. Further, Kyndryl promotes that its workforce's "average age [is] 35." Id. (quoting Kyndryl marketing material).

19.     While IBM has purported to deny any involvement in the layoffs by Kyndryl, it is clear that IBM has been involved in, and is behind, Kyndryl's continuation of IBM's discriminatory layoffs. Like IBM, Kyndryl calls the layoffs "Resource Actions." The severance package which Kyndryl has offered to laid-off employees appears to be based on the severance packages that IBM had offered its laid off employees. Indeed, they even include the same language, font, and spacing. The resources that Kyndryl has provided electronically to laid off employees were provided on IBM URLs.

20. Plaintiffs assert that Kyndryl was not acting independently of IBM when it terminated them and similarly situated employees, but rather was executing IBM's plan to continue to attempt to reduce the employment of older workers.

21. Following a lengthy and successful career at IBM, Plaintiff MaryKathryn Doheny was moved to Kyndryl in September 2021 as a Director of Global Software. In March 2023, Ms. Doheny was suddenly informed she was being laid off as part of "Resource Action." At the time of her separation, Ms. Doheny, who had an excellent work record and led teams of software licensing employees, was one of the oldest members of her team.

22. Ms. Doheny was laid off the day after she resolved her claim of discrimination against IBM. She asserts that her selection for layoff was not only a result of age discrimination, but also retaliation against her for pursuing a claim of discrimination against IBM.

23. After being notified that she would be laid off, Ms. Doheny attempted to utilize the services of Kyndryl's outplacement portal which was provided to assist her in identifying a new job. Throughout this process, Plaintiff was directed to IBM resources, including the initial link which was an IBM URL. Further, when she attempted to sign in to the portal, it requested her IBM employee identification number and not her Kyndryl identification number.

24. It was thus clear that Kyndryl was rolling out a layoff as a part of IBM's continued targeting of older workers for termination.

25. Like IBM had done, Kyndryl also continued its strategy of ensuring that older employees exited the company after being selected for layoff by preventing them

from obtaining open positions at the company. Plaintiff attempted to inquire about other open positions at the company but did not receive responses to her inquiries.

26. Similar to Ms. Doheny, Plaintiff Tony DeGruccio also had a long career with IBM before moving to Kyndryl, where he continued his work to develop sales opportunities within the healthcare and life science fields. Despite being a productive member of the sales team, Mr. DeGruccio was also selected for layoff in a "Resource Action."

27. After being informed that he was going to be laid off, Mr. DeGruccio spoke with his manager who told him it was futile to look for other positions at the company, as Kyndryl was looking for younger employees or "new blood." This advice was confirmed for him, as Mr. DeGruccio witnessed older employees being summarily rejected for positions for which they were qualified, without so much as an interview, while Kyndryl actively sought to place younger employees in other open positions.

28. When laying off employees, Kyndryl has provided them with a severance agreement purporting to release most legal claims, including claims under the ADEA. However, the agreements and purported release of ADEA claims are not valid, as employees were not provided with the required disclosures under the Older Workers Benefit Protection Act, 29 U.S.C §§623(a), 631(a).

29. The OWPBA requires that, in order to obtain a valid release of claims under the ADEA, an employer conducting a reduction in force, or mass layoff, must provide the ages of all employees who were retained and not retained, so as to allow laid off employees who are age forty (40) or over to assess whether they may have valid age discrimination claims.

30. Mr. DeGruccio was presented with a severance agreement that listed the ages of more than four hundred (400) employees who were being laid off. However, Mr. DeGruccio was not provided with any list of ages of employees who were being retained.

31. The severance agreement offered to laid-off employees is also invalid under the National Labor Relations Act ("NLRA"), as it contains an illegal confidentiality provision. See McLaren Macomb, 372 NLRB No. 58, 2023 WL 2158775 (Feb. 21, 2023).

## IV. COLLECTIVE ACTION ALLEGATIONS

32. Plaintiffs bring this case as a collective action on behalf of employees age forty (40) and older who have worked anywhere in the country who have been laid off from Kyndryl and may choose to opt in to this action.

33. These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have worked for Kyndryl under substantially similar conditions and have been subjected to Kyndryl's and IBM's policy and practices of targeting for layoff and disproportionately ending the employment of employees age forty (40) and older. They have also all been subject to Kyndryl's policy of preventing those employees from consideration for other open internal Kyndryl positions for which they are qualified.

## V. RULE 23 CLASS ACTION ALLEGATIONS

34. Plaintiff DeGruccio also brings a class claim pursuant to Fed. R. Civ. P. 23 under California law on behalf of Kyndryl employees age forty (40) and older who have worked for Kyndryl in California and whose employment separated within the relevant period.

35. This California class meets the prerequisites of Fed. R. Civ. P. 23 in that:

    a. The class is so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) Kyndryl employees age forty (40) or older whose employment has ended in California within the relevant period. As a result, joinder of all of these individuals is impracticable.

    b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to Kyndryl's effort to shift its personnel focus to younger employees, leading to the unlawful termination of a disproportionate number of older Kyndryl employees, in violation of the laws of California.

    c. With respect to these common issues, the claim of the named plaintiff is typical of the claims of Kyndryl employees age forty (40) or older who have worked in California and who lost their jobs with Kyndryl.

    d. Plaintiff and his counsel will fairly and adequately represent the interests of the class. The named plaintiff has no interests adverse to or in conflict with the class members whom he proposes to represent. Plaintiff's counsel is a well-known workers' rights firm that has litigated numerous similar cases, including similar cases alleging age discrimination by IBM.

    e. The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether Kyndryl targeted

older employees for layoff, or otherwise disproportionately ended the employment of older workers, and whether Kyndryl refused to consider hiring those employees to other open positions for which they were qualified due to their age.

36.     Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many Kyndryl employees in California, briefing of legal issues, and court proceedings.

## COUNT I

### AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)
### 29 U.S.C. § 621, *et seq.*

Defendants' conduct in selecting employees for layoff age forty (40) or older constitutes age discrimination in violation of the ADEA. Defendants' violation of the ADEA has been knowing and willful. This claim is brought on behalf of a class of Kyndryl employees across the country who may choose to opt in to this case, pursuant to 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

### CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, GOV. CODE § 12900, *et seq.*

Plaintiff Tony DeGruccio and other employees age forty (40) and older have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.* Defendants' conduct in conducting mass layoffs that affected a higher proportion of older employees (age forty (40) and over), constitutes unlawful discrimination against similarly situated Kyndryl employees who worked in California in violation of the FEHA.

## COUNT III

### RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. § 621, *et seq.*
### (For Plaintiff MaryKathryn Doheny)

Defendants' conduct in selecting Plaintiff MaryKathryn Doheny for layoff constitutes knowing and willful retaliation in violation of the ADEA. Ms. Doheny was laid off the day after resolving her prior discrimination claim against IBM. This claim is brought under 29 U.S.C. §§ 623(d).

Case 1:23-cv-03962-RA   Document 8   Filed 05/26/23   Page 12 of 13

## **JURY DEMAND**

Plaintiffs request a trial by jury on all claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Permission for Plaintiffs to notify other Kyndryl employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2. Certify this case as a Rule 23 class action under the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

3. Find and declare that Kyndryl and IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

4. Find and declare that Kyndryl and IBM violated the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

5. Find and declare that the severance agreement provided to laid off Kyndryl employees violates the OWBPA, 29 U.S.C §§626, and the NLRA, 29 U.S.C. § 157, and is invalid;

6. Award compensatory damages, including back pay and front pay, in an amount according to proof;

7. Reinstate Plaintiffs and similarly situated employees to their positions;

8. Award all costs and attorney's fees incurred prosecuting this claim;

9. Award liquidated damages and all appropriate statutory and regulatory damages;

10. Award interest;

11. Issue injunctive relief in the form of an order directing Defendants to comply with the ADEA; and

12. Any other relief to which Plaintiffs and class members may be entitled.

12

Dated: May 26, 2023

Respectfully submitted,

MARYKATHRYN DOHENY and TONY DEGRUCCIO, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, NY Bar No. 2971927
Thomas Fowler, *pro hac vice* forthcoming
Matthew Patton, *pro hac vice* forthcoming
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com
mpatton@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I will serve a copy of the foregoing document on all Defendants with the summons.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan